on behalf of Mr. Perez. My hope is to reserve three minutes for rebuttal. Sure. And I intend to focus on the first two issues raised in my briefs dealing with the district court having induced a constitutionally invalid guilty plea and then later erroneously denying a motion to replace counsel so that the defendant could file a motion to withdraw his guilty plea. Both those issues. Mr. Burns, could I ask a favor, please? Because I'm remote. Would you please get as close to the microphone as you can? Because when you back off, I'm not hearing you well. Sure. Sorry. Both those issues are founded on Mr. Perez's complaints about his defense counsel. Chief amongst those was that Mr. Perez has asked defense counsel to get a forensic expert to examine a cell phone so that they could establish that the government had taken the bulk of its trial evidence from a cell phone for which it did not have a warrant for the search and that therefore could support a suppression motion. When Mr. Perez raised these complaints, and that complaint in particular, defense counsel was there. He never denied that he'd failed to do that and he never justified that failure. The district court throughout the proceedings also never inquired into that failure. Counsel, I think you're, can I interrupt you? Because it feels like you're conflating or discussing both of these episodes at the same time. I do intend to do them seriatim after this. It's just those are the fundamental undeniable, undisputed facts. Okay. All right. And so when Mr. So can we drill down on, I mean, you mentioned that defense counsel didn't sort of justify his decision in litigating the case. I mean, it seems to me he's got some, the defense counsel is in a very difficult position there in terms of attorney-client privilege and not wanting to disadvantage his client because what if his answer is, I've looked at that and it's baseless, right? Like he's not going to want to announce that in court. So I'm not quite sure what you, I mean, one thing you can infer from his silence is that there's no there there. So what do you want us to do with that? Well, under the circumstances, of course, the district court is required to handle this ex parte by having government counsel leave the courtroom. Can I just, are we talking about the first episode now? Because in the first episode, I don't hear him complaining about attorney-client privilege. I think the record shows he's complaining about his government's performance. So I'm really having trouble talking about these simultaneously. Okay. So turning to the first instance, Mr. Perez tries to address the issue and he specifically brings up the second phone issue. Now that issue he later is able to give more substance to post plea when the second event occurs. But that's, he raises the second phone instance, the second phone issue. The district court cuts him off and says, look, we're too far down the road for this. I'm not going to hear this. You have two choices. You either plead guilty or you proceed with trial. And at that point, the district court effectively induces an involuntary. But he gave him quite a bit of time, including an overnight opportunity to think about what he wanted to do and to confer with his lawyer. That's correct. But the district court did not inquire as a district court under wind and other cases. He would have to have inquired. Again, I think in this first episode, I don't hear your client requesting or alleging that there's a breakdown of communication or do they want. No, he's not alleging a breakdown of communication. He's alleging that his counsel has failed to investigate, failed to get an expert for the second phone issue. He just doesn't get there because the district court cuts him off and says, I'm not going to hear this. You have two choices. So he doesn't get to develop it. He does get to develop it later when he again asked, when he asked for new counsel and said, I want to withdraw my guilty plea and explains what it is that he was getting at. That's why I'm addressing all those facts at once because he doesn't, in the first instance, get to explain. But we can't, we can't analyze it that way, I don't think. But correct me if you think I'm wrong. I think we have to know, look at what the district court knew at the time for each of these rulings. And it differed significantly. That's why I think it's important at the first episode, he didn't say, I want a new lawyer because there's a breakdown of communications or I can't talk to this guy or. No, he says that I want a new lawyer. And he brings up that the new lawyer has not investigated the second phone issue, nor the fact that he was released so they could gather more evidence. The district court then cuts him off and he doesn't get to explain what he means by that. At that point, the district court is obligated to inquire to at least hear out Mr. Perez. It doesn't do either of those things. It cuts him off, says, no, you're either proceeding with trial, we got a jury here, or you're pleading guilty. And it doesn't matter that Mr. Perez gets overnight to think about it. He doesn't, the district court doesn't fulfill its obligation to inquire into the problem, potentially resolve it as required by Winn and McClellan. So I'm trying to figure out and just think through what needs to happen when the allegation by the defendant is, I need a new lawyer because they're not litigating the case the way I want. Because I think the inquiry that the district court needs to engage in is different based on the defendant's assertion of what the problem is. If the problem is they won't meet with me, if the problem is, you know, they'll blow me off, if the problem is they don't, they're not taking the strategy that I want. I think those are different things and perhaps trigger different obligations by the district court in terms of what that inquiry should look like. So when the allegation here is just this lawyer is not litigating this case how I want or he's not, you know, running down different defenses or different theories that I want, what is the inquiry? I'm trying to figure out if the district court, and we'll stick with the first during trial scenario, if the district court had asked more questions, what is the district court going to learn? Because I've already pointed out, I'm not sure what the defense attorney can say there while also complying with his obligations to his still existing client. And the defendant is going to say what? It's more of the same, right? Like, I don't like how this guy is defending me. So it's like what more is the I think there are a number of questions wrapped up in what your honor just asked. I think in the first instance, the district court has to hear out Mr. Perez rather than cut him off. And then the district court, under this court's case law, is clearly obligated to inquire. Now, obviously that inquiry is directed by what the complaint is, but the district court doesn't do that. The district court cuts off Mr. Perez. So the cutting off, I'm not quite sure I understand because I normally would, except for we have this sort of series of events where he asks for a new time. He says the same thing. So it's not like the district court missed something he wanted to say about the conflict he was having with his lawyer. And we can reasonably infer that because every other time, both before and after, he's saying the same thing. But I would dispute that. The first time that this comes up when he's challenging this lawyer is on the first day of trial. And Mr. Perez starts addressing that there's the second time. I thought he brought it up even before a trial started. No. He did, but he actually got his substitution of counsel. Okay. So the very first time he complained, that lawyer was replaced, right? Yes. And it was the same complaint. I understood that the very first time he complained, he did raise, or perhaps the lawyer did, raise the breakdown in communications. Second time around, he didn't. And to me, sort of following up on what Judge Forrest is asking, that seems to be important to me, that the judge is now looking at a second request, right? A second time where the judge had cautioned him, just because you want the law to be one way, that's not what the lawyer is bound to, is bound to follow the existing law and do what the lawyer thinks is best on the law. So it seems that he's voicing the same complaint. And the judge is saying, you know, I've already explained to you. During the first instance, Mr. Perez says, look, I don't want new counsel. I'm just raising this concern because I've raised issues with this lawyer. But he gets new counsel. That's true. But that wasn't his request. And the judge says, well, if you tell me it's a personality thing, I'll give you a new lawyer. So they both say, OK, it's a personality thing. And he says, don't try this again. It's not going to go well if you try it again. But it wasn't a personality thing. But regardless, we get to this instance right at the beginning of the trial where he says he's not investigating issues connected to the second phone and that they released me on accident. He's addressing specific instances. And he's cut off. In the transcript, it shows, I know this case, dot, dot, dot. And the court says, let me give you a choice because we're in trial now, which is way down the line. You have two choices. He also gives him overnight to think about it. And that, for me, is terribly important. I've read the transcript as well. But on this first episode, it seems to me that you've got a really steep hurdle because he gives him time to think about it. The guy comes back the next morning and he sticks with his decision to change his plea. But he didn't say you didn't hear me out. I've got this other problem. Well, the judges make clear what I'm concerned about. From your perspective, what what did your client tell the court was to be gained with respect to the second gun? I thought the evidence showed that was denied that there was one. And if there was one, it wasn't clear what benefit it was. From your perspective, what did your client think he was going to gain by exploring this second gun? It's a second phone, Your Honor. And in a nutshell, I apologize. And in a nutshell, the government obtained two phones from Mr. Perez. One, it got a warrant to search. One, it did not have a warrant to search. And what he's telling his lawyers, look, all this trial evidence they're using, they took from the phone for which they did not have a warrant. You need to get an expert that can connect those dots and to support a suppression motion, a perfectly reasonable request. And when he gets a chance to explain it to the court, he does. He explains that. And at that point, the judge is incumbent on the judge under this court's case law to inquire of defense counsel. It obviously creates some difficulties potentially with privilege and attorney-client communications. That's why the government counsel is made to go out of the room. This happens all the time. That's why the inquiry is made to the extent that there is some invasion of privilege or otherwise. The defendant effectively waives that by raising the issue. The judge can inquire into it. But the judge must do that. If a defendant is saying my lawyer is not doing the most fundamental thing to represent me in the case. What's the most fundamental thing to represent me in the case? What are you referring to? Investigate. Get an expert. File suppression motion. Let me be candid. It seemed to me that in the first episode, you're viewing it, asking us to view it with 20-20 hindsight and incorporate what the judge learned at the second episode. And the second episode, I actually find much more problematic. I think the first episode, it's only fair to look at what happened in the second episode. Because the first episode, if you look on 3ER 327, dot, dot, the judge cuts him off and says I'm not hearing it from right now. We've got a jury. We're going ahead with the jury. I'm not doing this. Tells him I'm not going to hear it. When he gets a chance to explain, then again, when he asks for new counsel to withdraw his plea, he says look, I've been talking about this second phone the whole time. And not only did the lawyer not investigate, get an expert on the second phone, he lied to me about it. And I've discovered he lied to me about it. That's what's much more problematic. That's what's much more problematic. In my book. The second time around, the judge gave him, well, he gave the judge reason to believe that the problem was he thought his lawyer had been untruthful with him. And that's in a different galaxy as far as I'm concerned. And Mr. Perez admittedly wouldn't have known that during the first instance because he found out about it post-trial. But what he did know is I told this guy this evidence does not come from the phone that they have a warrant for. He needs to get an expert. He's not getting an expert. Now, did that all come out during the first instance? No. But why didn't it come out? Because the judge said, look, I'm not hearing this. We're too far down the line. You're either pleading guilty or we're going ahead with the trial. Do you want to reserve some time? Yes. Good morning. May it please the court. Matthew O'Brien on behalf of the United States Fish and Wildlife Service. The inquiry was sufficient. The mid-trial inquiry was sufficient because the defendant's theory about the second phone had just been disproven by the case agent's testimony, which the district court had just heard. The case agent testified at length about where the digital evidence came from. He testified that it was seized when the defendant was arrested at the border on February 25th, 2022. The Fish and Wildlife Service then obtained search warrants for that first phone. The second search warrant was for evidence of firearms. That the agency's digital forensics lab then assigned a code, C2208, to that one phone and that one phone only. That the agents then searched the phone, tagged the evidence in their software of the firearm images. That tagged evidence then went into forensic reports, each one of which was for C2208. We submitted some of those trial exhibits in the SCR, trial exhibits one and two. But what do we do with, I mean I read all that transcript too and I was trying to figure out sort of what is the record before the district court on this second phone and where the digital evidence came from. Because while our case law talks about the district court needing to conduct an inquiry when an issue like this is raised, we also say all the district court needs to have is a sufficient basis for their decision and that can be from the whole record. So I went down that track that you're trying to get us on. What I don't think is there is a clear indication of the district court ever taking up the issue of is it possible that the government's evidence is wrong and there is some second phone out there where something came from. Maybe that seems far-fetched but we have nothing in the record that I can find where the district court is looking at that and actually giving an answer to that. And whether the answer is you're completely off base, the government dotted all its I's and crossed all its T's and this is solid, we don't ever have anything from the district court looking at that. So what do we do there? That's correct, Your Honor. We're not disputing that the district court could have made a better record as is often the case. But to get to Your Honors, kind of the first part of your question, on the one hand there's absolutely no evidence supporting defendants' second gun theory. Nothing. The defense counsel... Do you stay closer to the microphone, please? I'm sorry about that. That's all right. Could you stay closer to the microphone, please? I apologize. Second phone. There's nothing. Even my colleague here points to nothing. He says presumably there's some evidence. Nobody's ever pointed to anything. Well, at this point there wasn't. At this point there wasn't. Correct. And there still isn't. Well, no, I don't agree. But we're talking about the first episode, right? Yes. So on the one hand there's no evidence in support of the second phone theory. On the other hand, the case agent just testified for hours that all of the evidence came from that first phone. Yes, but when you get to the second episode, that doesn't matter. The problem with the second episode is that this defendant believed that his lawyer had been untruthful with him. That's a very different problem. It would be if there was anything to back it up. No, no. Not if there's anything to back it up. He could be wrong about that. But his belief was that his lawyer had been untruthful with him. And that's a very serious problem when we're talking about a breakdown in communications. I agree, Your Honor, but when you look at the... It doesn't have to be right. Why do you think he has to be correct in his belief that his lawyer had been untruthful with him? Your Honor, I misspoke. I apologize. I don't want to go down that rabbit hole there. Okay. When you look at the inquiry, the post-trial inquiry, which was because there was no jury waiting outside, the district court gave the defendant more time. Yes. It's an ER 408 to 411. And there, the defendant said that his lawyer, this is a second court-appointed lawyer, told me there's no evidence from the other phone. All of the evidence in the case, that's true, that there was no evidence from the second phone. So there's this dispute based solely on... I mean, did the agent testify? This is what I don't There were two phones. We only pursued this one. And here's all the reasons why we didn't pursue that one. Was it that explicit? I don't think the second phone was ever referenced in trial. So that's the point. That's the point, right? The defendant's concern about his lawyer not representing him properly has never been addressed by the court. So we come back to this statement of that we have of it's fine to not conduct a detailed inquiry if there's sufficient information to resolve the motion that's being made. And how can we say that when the district court is never actually taking up this second phone issue at all, right? Because I agree with your honor on the standard. The district court must have had sufficient information to make an informed decision. And the district court, as far as we can tell, has no information about the possibility of a second phone and doesn't ask a question about why that is. I disagree, your honor, because the case agent at trial testified that all 100 of the government's digital evidence came from the first phone. But at the second episode, after he had entered his plea, right, he had received discovery from parallel trial, from the other trial, indicating that his lawyer had been in communication with the government's counsel about a second phone. That's why he thought his lawyer had not been truthful with him. So what about that? I think your position seems to be trying to convince us that in this trial, in what I'll call the gun trial as opposed to the reptile trial, in the gun trial, the government's evidence all came from one phone and I'm not pushing back on that premise. But the problem is he was convinced that there was some evidence seized from a second phone that hadn't been subject to a warrant, apparently. That's what his belief was. And his lawyer told him there was no phone. There was no second phone. Well, there was a second phone. It was just never searched. I don't think there's any excuse. Whatever. But the problem is he's saying, again, I think whether he's correct or not, you know, doesn't matter. But he's explaining that his lawyer had told him about the second phone. His lawyer told him that the government didn't have a phone. There was no second phone. And then he gets discovery telling him that his lawyer had been in communication with the government about a second phone. So now he thinks his lawyer lied to him. Whether the lie, and that's my word, mattered whether or not in terms of creating a legal defense. The problem is he's believed his lawyer has been untruthful with him. At least that's my record. And that's a problem that I don't think the court inquired about. Your Honor, I think we disagree whether the inquiry was sufficient. But I'd like to point out, even if Your Honor's concerns are correct, then the remedy here would be, we disagree, if the court doesn't want to affirm, the remedy would be to remand to the district court for further fact finding about whether, about the nature, the extent of the alleged conflict. Right, to conduct the inquiry that didn't happen. Right. And then if the district court finds that the alleged conflict didn't actually prevent an adequate defense, then the district court could just re-sentence the defendant. There's no need for like a new trial. I didn't say anything about a new trial. And Your Honor, I just want to point out a case we did not cite in our briefs, but on the remand for fact finding issue, United States v. MUSA, M-U-S-A, and that's a 220 F3rd 1096 from this court. It's a slightly different context in the revocation of supervised release context, but the remedy clearly is just to remand to the district court for further fact finding. On the breakdown? On the, if there's a conflict and if the conflict actually presented, prevent, excuse me, prevented an adequate defense. Right. Did you want to reserve the rest or address any of the other issues? Yes, Your Honor. I'd like to address counsel's arguments about Hernandez and the requirements for the inquiry. Counsel criticized in the reply brief our framing of the issue as a analytical framework. And I'd like to point out why we framed our answering brief that way. And I'm quoting from page 17 of the opening brief. Quote, indeed, appointing new counsel was the only way the court could remedy such a situation. Accordingly, it is appropriate to consider Perez's interrupted complaint as a request for new counsel. That's the opening brief. So that's what we did in our answering brief. And I'd just like to point out to the court why Hernandez does not control here. Hernandez was a Ferreta case. The defendant in Hernandez three weeks before trial, not during trial, asked to proceed pro se. This court then, in its, Hernandez opinion, went through the three-part Ferreta inquiry that district court has to tell the defendant the nature of the charges, the potential penalties, and the pitfalls of self-representation. May I, may I interrupt? Forgive me for interrupting. But I really didn't understand why we were talking about Hernandez in the first instance, much less whether Hernandez has been impliedly overruled, because it's a Ferreta case. So I'm not sure why we're here. Okay. Your Honor, I just wanted to make sure that I raised that point because the briefing was kind of, the parties were speaking past each other. Yes. Okay. Anything else? Not unless the court has any further questions. Not from Judge Forrest, and it looks like not from Judge Smith. Nope. Thank you for your argument, counsel. Thank you, Your Honor. I guess I would be a fool if I didn't start by explaining why I think Hernandez applies. Well, I wouldn't say that you're a fool, but I'm curious about what your answer is going to be. I think the fundamental point there is if a court's going to take a guilty plea, part of it of the Rule 11 colloquy, which is constitutionally required by Supreme Court case law, is to ensure the defendant is told, look, you have a right to counsel, you have this right, you have that right, you have to ensure the defendant knows they have those rights and they'll be respected. Otherwise, the plea is not voluntary. If you are taking, if you are forcing a plea under these circumstances where the defendant is saying, my attorney is not doing his job, and there's this big issue, and you're saying, look, I won't hear it. You either go ahead with the attorney who you're claiming is not doing a good job or you plead guilty. When you take that guilty plea, you're not getting a voluntary plea because the person is saying, you're telling me I have this right to counsel and whatever, but I'm telling you, I just told you counsel's not doing anything. So that just cannot produce a valid guilty plea. The district court had to inquire to clear that up. Otherwise, it's inducing an invalid plea. And that obviates the plea. Coming back to the evidence of the second phone, Mr. Perez was in a good position to know where the evidence was coming from. I mean, probably a better position really than anybody as far as the fundamental knowledge. He told his counsel that. Now, if Mr. Perez gets up and testifies during trial, oh, you know, this evidence came from that. But it doesn't matter if he's right or not. It just doesn't matter at this point when we're talking about a pre-sentencing. Well, I think it matters as far as suppressing the evidence. He thought that it was important, and he thought his lawyer had been untruthful with him. Well, I agree with that as a second layer. But as a first layer, you know, when you tell your lawyer something like this, the lawyer, it's incumbent upon them to go get an expert. The government got three experts, including a phone expert. This defense lawyer couldn't get one expert to run down this lead. You don't have a choice at that point as a defense lawyer. I've tried about 50 cases. My client tells me something like this. I don't question it. I don't blow it off. I don't ignore it. I run it down. He had to do that. Imagine having this lawyer that you're appointed, and you tell him something like this, and he ignores you. Now, do we know that he exactly ignored him? Do we know exactly what happened? No, we don't. But that's because the district court failed to inquire, which was incumbent upon the district court under this court's case law. Any more questions? Judge Smith, any questions? No questions. I think that's it for us. Thank you both for your advocacy. We appreciate it very much. We'll take that case under advisement.
judges: SMITH, CHRISTEN, FORREST